UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TEODORO PASILLAS,

              Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

              Respondent.

Case No. C21-681-RAJ-MLP

REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Petitioner Teodoro Pasillas ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, proceeding *pro se*, brings this 28 U.S.C. § 2241 habeas petition to obtain release from detention or a bond hearing. (Pet. (Dkt. # 4).) Currently before the Court is the Government's return memorandum and motion to dismiss. (Resp.'s Mot. (Dkt. # 7).) Petitioner did not file a response, but the Government has filed a supplement (Resp.'s Supp. (dkt. # 10)).[1]

---

[1] Where a party fails to file papers in opposition to a motion, such failure may be considered by the Court as an admission that the motion has merit. Local Civil Rule 7(b)(2). Nevertheless, because Plaintiff is proceeding *pro se*, this Court will construe his pleadings liberally.

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Respondents' motion to dismiss (dkt. # 7) and Petitioner's habeas petition (dkt. # 4) be GRANTED in part and DENIED in part. Specifically, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## II.   BACKGROUND

Petitioner, a native and citizen of Mexico, entered the United States at some unknown time. (Meyer Decl. (Dkt. # 8) at ¶ 3.) On January 22, 2020, Petitioner pleaded guilty to charges of conspiracy to distribute heroin. (Bohl Decl. (Dkt. # 9) at ¶ 3, Ex. A (Dkt. # 9-1) at 1.) On May 15, 2020, Petitioner was sentenced to 11 months as time served. (Meyer Decl. at ¶ 4; Bohl Decl. at ¶ 4, Ex. B (Dkt. # 9-2) at 2-5.) On May 18, 2020, ICE took custody of Petitioner and transferred him to the NWIPC. (Meyer Decl. at ¶ 5; Bohl Decl. at ¶¶ 5-6, Ex. C (Dkt. # 9-3) at 3-5, Ex. D (Dkt. # 9-4) at 2-5.) On that date, ICE additionally served Petitioner with a Notice to Appear, charging him with removability due to his criminal conviction. (*Id.*)

On June 9, 2020, Petitioner appeared before an immigration judge, admitted to the allegations in the Notice to Appear, and an immigration judge sustained all charges from the Notice to Appear. (Meyer Decl. at ¶ 6; Bohl Decl. at ¶ 8, Ex. F (Dkt. # 9-6) at 2.) Petitioner was scheduled for a bond hearing that same day but withdrew his request for a custody redetermination. (*Id.*) Petitioner then sought relief from his removal order by applying for asylum, withholding of removal, and protection under the Convention Against Torture. (Meyer Decl. at ¶ 7, Bohl Decl. at ¶ 9, Ex. G (Dkt. # 9-7) at 2.) On July 22, 2020, Petitioner had a hearing on his applications where an immigration judge denied his requested relief and ordered him removed to Mexico. (*Id.*) On August 24, 2020, Petitioner filed a notice of appeal to the

REPORT AND RECOMMENDATION - 2

1    Board of Immigration Appeals ("BIA"). (Meyer Decl. at ¶ 8; Bohl Decl. at ¶ 10, Ex. H (Dkt.

2    # 9-8) at 2-4.)

3          On January 10, 2021, ICE reviewed Petitioner's custody status due to the COVID-19

4    pandemic and determined that Petitioner should remain detained because he was a danger to the

5    community. (Meyer Decl. at ¶ 9, Bohl Decl. at ¶ 11, Ex. I (Dkt. # 9-9) at 2-3.) On February 10,

6    2021, Petitioner received an additional bond hearing. (Meyer Decl. at ¶ 10; Bohl Decl. at ¶ 12,

7    Ex. J (Dkt. # 9-10) at 2-3.) The immigration judge at that hearing found Petitioner was ineligible

8    for bond because he was subject to mandatory custody under 8 U.S.C. § 1226(c) and Petitioner

9    did not appeal. (*Id.*). On March 12, 2021, ICE completed a second custody redetermination and

10   again found Petitioner should be detained because he was a threat to public safety. (Meyer Decl.

11   at ¶ 11, Bohl Decl. at ¶ 13, Ex. K (Dkt. # 9-11) at 2-3.)

12         On June 9, 2021, the BIA dismissed Petitioner's appeal as untimely filed, thus rendering

13   his removal order administratively final. (Meyer Decl. at ¶ 12; Bohl Decl. at ¶ 14, Ex. L (Dkt.

14   # 9-12) at 2-3.) On June 11, 2021, Petitioner, proceeding *pro se*, filed his habeas petition. (Pet.

15   (Dkt. # 4).) On June 28, 2021, Petitioner filed a motion to reopen and a request to stay removal

16   with the BIA arguing that his untimely appeal was the result of ineffective assistance of counsel.

17   (Meyer Decl. at ¶ 13; Bohl Decl. at ¶ 15, Ex. M (Dkt. # 9-13) at 7-10.)

18         On July 9, 2021, Petitioner filed a petition for review and motion for stay of removal with

19   the Ninth Circuit. (Meyer Decl. at ¶ 14, Bohl Decl. at ¶ 16, Ex. N (Dkt. # 9-14) at 2; *see also*

20   *Pasillas v. Garland*, Case No. 21-376 (9th Cir.)) At that time, the Ninth Circuit granted

21   Petitioner a temporary stay of removal and set a briefing schedule for his petition for review.

22   (*Id.*) On September 29, 2021, the BIA granted Petitioner's motion to reconsider and noted that a

23

REPORT AND RECOMMENDATION - 3

decision on his appeal will be forthcoming in a separate decision. (Second Bohl Decl. (Dkt. # 11) at ¶ 2, Ex. O at 2-4.)

### III.    DISCUSSION

Petitioner argues in his petition that he has been unlawfully detained for over one year and seeks release from detention or a bond hearing pursuant to *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). (Pet. at 1, 3-4.) Respondents counter that Petitioner's detention remains statutorily authorized pursuant to § 1226(c) and that his detention comports with due process. (*See* Resp.'s Mot. at 1-2.)

#### A.    Statutory Basis for Petitioner's Detention

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings.[2] Section 1226(a) grants DHS the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S.Ct. 830, 846-48 (2018). Section 1226(c) includes any non-citizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Here, Petitioner was found to be deportable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to his conspiracy to distribute heroin conviction. As such, Petitioner's detention is statutorily mandated by § 1226(c) until his removal proceedings have concluded.

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"), while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

Petitioner first argues that under the Ninth Circuit's decision in *Casas-Castrillon*, the statutory basis for his detention shifted from § 1226(c) to § 1226(a) because his removal proceedings have concluded. (*See* Pet. at 3-5.) However, as previously noted, Petitioner was granted a temporary stay of removal by the Ninth Circuit upon its acceptance of his petition for review on July 9, 2021, and the BIA has since granted Petitioner's motion to reconsider his appeal of his final removal order. (*See* Meyer Decl. at ¶ 14, Bohl Decl. at ¶ 16, Ex. N at 2; Second Bohl Decl. at ¶ 2, Ex. O at 2-4.)

Under *Casas-Castrillon*, a shift from § 1226(a) to § 1226(c) would occur only after a non-citizen's removal proceedings have concluded or are final. *See Casas-Castrillon*, 535 F.3d at 948 ("Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a)."). In this case, Petitioner's removal proceedings are ongoing, and he thus remains subject to mandatory detention under § 1226(c). Moreover, the undersigned has previously concluded that *Casas-Castrillon* no longer remains good law in light of the Supreme Court's decision in *Jennings* because the two cases are clearly irreconcilable. *See e.g., Juarez v. Wolf*, 2021 WL 2323436, at *3 (W.D. Wash. May 5, 2021*), report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (concluding that *Casas-Castrillon* is clearly irreconcilable with *Jennings*); *Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927-28 (W.D. Wash. 2020) (same).[3]

Because Petitioner's removal proceedings have not yet concluded and given this Court's previous analysis of *Casas-Castrillon*, the Court concludes that Petitioner remains subject to

---

[3] The viability of *Casas-Castrillon* remains an open question in the Ninth Circuit and the issue is now pending in *Avilez v. Barr*, Ninth Circuit Case No. 20-16142.

REPORT AND RECOMMENDATION - 5

mandatory detention under § 1226(c). Therefore, the Court recommends that his request for release on this basis be denied. *See Muhamd v. ICE Field Office Director*, 2020 WL 6323902, at *6 (W.D. Wash. Sept. 14, 2020) ("The Court does not know of any authority that permits federal courts to order the release of § 1226(c) detainees . . . .")

### B. Petitioner is Not Otherwise Entitled to Release

Petitioner additionally appears to request release from detention or a bond hearing on the basis his detention has become indefinite. (Pet. at 5.) A noncitizen detained under § 1226(a) is entitled to release if he can show that his detention is indefinite within the meaning of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (9th Cir. 2008). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his petition for review was unsuccessful. *Id.* Here, as explained above, the Court has determined that Petitioner's detention is governed by § 1226(c) and not § 1226(a). Furthermore, Petitioner does not present any evidence that ICE will not be able to remove him if he is ultimately ordered removed at the conclusion of his appeals. Therefore, the Court finds that Petitioner's removal is not indefinite, and that his detention continues to be mandatorily authorized by § 1226(c).

### C. Due Process Requires that Petitioner Receive a Bond Hearing

Finally, Petitioner argues that his prolonged detention violates his due process rights, and that he is entitled to release or a bond hearing. (Pet. at 6.) In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c) explaining that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and holding that "the Government may constitutionally

REPORT AND RECOMMENDATION - 6

detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F.Supp.3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi*, 434 F.Supp.3d at 923-24 (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), judges in this District have adopted a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089, at *6-7. Under the *Martinez* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *9 (citing, inter alia, *Cabral v. Decker*, 331 F.Supp.3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore*, *Zadvydas*, and pre-*Jennings* circuit court cases holding that as a matter of constitutional avoidance, § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S.Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S.Ct. 830; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[4]

Consistent with the prior decisions of judges in this District, the Court will apply the *Martinez* factors to assess whether Petitioner's § 1226(c) detention has become unreasonable.

---

[4] Respondents additionally analyzed Petitioner's detention under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F.Supp.3d at 1106 (citing *Mathews*, 424 U.S. at 334). For the reasons explained by Judge Robart in *Banda*, the Court declines to apply the *Mathews* test in this case. *See id.* at 1106-07.

REPORT AND RECOMMENDATION - 8

### i. Length of Detention to Date

The length of detention is the most important factor. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10. The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (finding that nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F.Supp.3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months.").

Here, at the time Petitioner filed his petition, he had been detained for an ongoing period of 12 months. (*See* Pet. at 1.) However, Petitioner's detention has extended to approximately 17 months during the pendency of this proceeding. As such, the Court finds the first factor weighs in favor of granting Petitioner a bond hearing.

### ii. Likely Duration of Future Detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. As previously noted, Petitioner's petition for review was filed with the Ninth Circuit on July 9, 2021. The briefing for Petitioner's petition for review will not be completed until January 2022, at the earliest. *See Pasillas v. Garland*, Case No. 21-376, Dkt. # 5 (9th Cir.). According to the Ninth Circuit's public website, oral argument in a civil case may not be set for 12-20 months from the time the

notice of appeal was filed, and following argument, the Court of Appeals may take three months to a year to decide the case. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed 10/15/2021). Even if Petitioner's case is resolved relatively quickly, it is unlikely that the Ninth Circuit will rule within the next six months, and it may take up to a year or longer. Furthermore, Petitioner additionally has an appeal of his final order of removal pending before the BIA. (*See* Second Bohl Decl. at ¶ 2, Ex. O at 2-4.) Accordingly, the Court finds this factor weighs in favor of Petitioner.

        iii.  *Criminal History*

Next, under the third and fourth factors, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F.Supp.3d at 262. The relevance of these factors is that they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F.Supp.3d at 262.

Here, Petitioner's criminal conviction was entered pursuant to a plea deal, which resulted in an 11-month sentence of confinement as time served for a charge of conspiracy to distribute heroin. (*See* Bohl Decl., Ex. A at 1, Ex. B at 2-5.) In May 2020, Petitioner was released to ICE custody and transferred to the NWIPC, where he has remained detained for the past 17 months. (*See* Bohl Decl., Ex. C at 3-5, Ex. D at 2-5.) Petitioner's 17-month length of detention has now exceeded his original 11-month criminal sentence. Therefore, the Court finds that the third factor weighs in favor of Petitioner.

Pursuant to his plea agreement, Petitioner pleaded guilty to facts that acknowledged he worked as part of a drug trafficking organization to distribute heroin and methamphetamine in

REPORT AND RECOMMENDATION - 10

Tacoma. (Bohl Decl., Ex. A at 5-8.) Specifically, Petitioner's plea agreement details at least four incidents where Petitioner was observed by law enforcement delivering over $10,000.00 worth of heroin and methamphetamine. (*Id.*) Given the nature of the criminal conspiracy Petitioner was involved in, the Court finds the fourth factor weighs in favor of the Government.

          *iv.*    *Conditions of Detention*

Under the fifth factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F.Supp.3d 853, 860 (D. Minn. 2019) (citation and internal quotations omitted).

Here, the Court finds this factor weighs neutrally because the parties have not submitted any evidence regarding the conditions at the NWIPC.

          *v.*    *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F.Supp.3d at 665 (citing *Hernandez v. Decker*, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [non-citizen] may serve not only to put off the final day of deportation, but also to

REPORT AND RECOMMENDATION - 11

compel a determination that the [non-citizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [non-citizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [non-citizen]."). Thus, this factor weighs against finding detention unreasonable when a non-citizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

Petitioner's filing of a petition for review with the Ninth Circuit and motion for reconsideration of his appeal to the BIA have undoubtedly added time to his length of detention. However, there is no evidence in the record that Petitioner has prolonged his stay by abusing any of the processes provided. Therefore, the Court finds that the sixth factor weighs in favor of Petitioner.

With respect to the government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11. Here, there is no evidence in the record that the Government has engaged in any deliberate delay tactics or caused undue delay in Petitioner's proceedings. Petitioner was detained by ICE on May 18, 2020, conceded his removability on June 9, 2020, and an immigration judge denied his applications for relief and ordered him removed on July 22, 2020. Accordingly, the Court concludes the seventh factor weighs in the Government's favor.

          *vi.*    *Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F.Supp.3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

Petitioner is pursuing a petition for review in the Ninth Circuit and an appeal of his removal order before the BIA. At this juncture, the record does not contain sufficient information to allow the Court to make a prediction as to the likelihood of Petitioner's success with his pending claims. In the absence of any evidence that Petitioner's appeals are frivolous or taken in bad faith, the Court finds that this factor weighs neutrally.

          *vi.*    *Weighing the Factors*

As discussed above, four of the eight factors weigh in Petitioner's favor, two factors weigh in the Government's favor, and two factors are neutral. The Court therefore concludes that Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable and violates due process. As such, the Court recommends that the proper remedy in this instance is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See, e.g.*, *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undercut the constitutional due process holding in *Singh*); *Banda*,

F.Supp.3d at 1120-21 (requiring immigration judge to apply the procedural requirements of *Singh*); *Djelassi*, 434 F.Supp.3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases).

## IV.   CONCLUSION

For the forgoing reasons, the Court recommends that both Respondent's motion to dismiss (dkt. # 7) and Petitioner's habeas petition (dkt. # 4) be GRANTED in part and DENIED in part. Specifically, Petitioner's request for release should be DENIED, but Petitioner should be GRANTED a bond hearing that comports with the procedural requirements of *Singh* within 30 days of an Order on this Report and Recommendation. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 12, 2021**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Richard A. Jones.

Dated this 18th day of October, 2021.

_____
MICHELLE L. PETERSON
United States Magistrate Judge